UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

THE WINE GROUP, LLC                    No. 2:10-cv-02204-MCE-KJN

      Plaintiff,

  v.                                   <u>MEMORANDUM AND ORDER</u>

L. AND R. WINE COMPANY, INC.
AND ALABY, LLC,

      Defendants.

_____

AND RELATED COUNTERLAIM
_____


----oo0oo----

Before the Court are: (1) The Wine Group, LLC's ("TWG") Motion for Summary Judgment (ECF No. 56); (2) L. and R. Wine Company, Inc.'s ("L&R") Motion for Partial Summary Judgment on TWG's Amended Second Affirmative Defense (ECF No. 58); (3) L&R's Motion for Summary Judgment on its Counterclaim for Cancellation of TWG's Trademark Registration (ECF No. 60); (4) TWG's Contingent Motion for Summary Judgment on L&R's Cancellation and Inequitable Conduct Claims (ECF No. 69);

(5) L&R's Motion to Strike the Declarations of L. Jones and J. Sutton and Cross-Motion for Summary Judgment on TWG's Claims Based on TWG's Unclean Hands (ECF No. 72); and (6) TWG's Contingent Cross Motion for Summary Judgment on L&R's Claims of Unclean Hands (ECF No. 86).  The motions are fully briefed.[1]  For the reasons that follow TWG's Motion for Summary Judgment (ECF No. 56) is granted and the remainder of the motions are denied either on the merits or as moot.

## PROCEDURAL BACKGROUND

### A.   TWG's Complaint and L&R's Counterclaim

This action arises from a federal trademark infringement dispute between two wineries, each of which contends that it has the trademark rights to an octagonal wine box design, and each of which seek to prevent the other from any further infringement.

TWG is a winery and a Delaware limited liability company with its principal place of business in Tracy, California.  (See TWG's Complaint ("Compl."), ECF No. 1 ¶¶ 3, 7.)  L&R is also a winery and is a Pennsylvania corporation having its principal place of business in Lancaster, Pennsylvania.[2]  (Id. ¶ 4.)

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

[2] The other defendant, Alaby, LLC ("Alaby"), is a Tennessee corporation with its principal place of business in Knoxville, Tennessee.  (Compl. at ¶¶ 4, 5.)  TWG contends that L&R and Alaby do business together, which L&R admits, and that they share
(continued...)

TWG alleges that it was the first company to introduce "bag in box" wines, and that to differentiate itself from competitors, it started to develop an octagonal wine box in 1999, which, in 2009, it developed for premium wines.  (Id. ¶¶ 8-11.) Specifically, TWG states that, in 1999, it obtained U.S. trademark registrations for the octagonal box design (registration no. 3,009,688).  (Id. ¶ 9.) Thereafter, in 2010, TWG states that it developed the concept for selling premium wines in the octagonal-sided box and it obtained trademark registrations both for the design (for which it had the prior registration) and the "Octavin" name it had given the box design (registration nos. 3,800,596 (box design) and 3,775,740 ("Octavin" name)).  (Id. ¶¶ 11-12.)

In 2010, TWG states it began selling wine in the "Octavin" box.  (Id. ¶¶ 13-14). TWG alleges that L&R received approval to sell its flavored wine named "Like No Other" or "LNO" in an octagonal box from the Department of the Treasury's Alcohol and Tobacco Tax and Trade Bureau in December 2009, that several months later it launched a web site selling the LNO wine, and that L&R has since been marketing the LNO wine aggressively by various different means.  (Id. ¶¶ 15-18.)

---

[2](...continued)
common shareholders, officers, or directors, which L&R denies. (Compl. at ¶¶ 5, 6; L&R's Answer and Counterclaim (ECF No. 8) at ¶¶ 5,6.)  Neither TWG nor L&R state what, exactly, Alaby does, but TWG's primary allegations in regard to Alaby, which are admitted by L&R, are that Alaby launched a website for one of L&R's wines in an octagonal box and that it prepared a video advertisement featuring one of L&R's wines in an octagonal box. (Compl. at ¶¶ 16, 18; L&R's Answer and Counterclaim at ¶¶ 16, 18.)  For efficiency's sake, unless otherwise noted, Defendants will be collectively referred to as "L&R."

TWG's First Claim, for federal trademark infringement
alleges that: (1) its octagonal box design is not functional and
is more expensive than the standard box design; (2) its octagonal
wine box design and L&R's are virtually identical, and both wines
would be sold to the same consumers of wine in the same channels
of trade, which creates a likelihood of confusion for consumers;
and (3) was the first to use the octagonal box design and the
first to file trademark applications. (Id. ¶¶ 15-22.)  TWG
contends that it has been injured by L&R's use of the octagonal
box and that L&R's use was willful, intentional and in bad faith.
(Id. ¶¶ 23-25.)  TWG's second claim seeks restitution based on
L&R's alleged unjust enrichment. (Id. ¶¶ 26-27.)  TWG seeks an
injunction enjoining L&R from any further infringement, as well
as restitution, costs and any further relief. (Id. at pp. 7-8.)

In its Answer and Counterclaim, L&R generally denies TWG's
claims, and, as a Counterclaim, asserts that it was a prior user
of the Octagonal box design, therefore TWG is actually infringing
on L&R's rights to the make. (L&R's Answer and Counterclaim, ECF
No. 8.)  Specifically, L&R asserts that, in 2007, it developed a
concept for selling wine in an octagonal box, began selling wine
in an octagonal box in 2008, and thereafter sold wine in
octagonal boxes on a continuous basis. (Id. ¶¶ 46-48.)  Like
TWG, L&R asserts that its octagonal box design is distinctive and
also virtually identical to TWG's, is not functional, is more
expensive than a rectangular box, and that its wine and TWG's may
be sold to the same consumers in the same channels of trade.
(Id. ¶¶ 11, 21-22, 49.)
///

4

As affirmative defenses, L&R argues, inter alia, that it is a prior user and has trademark/trade dress rights to the octagonal box design, and that TWG's action violated L&R's First Amendment rights.  (Id. at pp. 5-6.)[3]  In addition, L&R asserted that after discovery, "there is likely to be evidence that TWG's claims are barred in whole or in part by the doctrines of unclean hands, waiver, acquiescence, absence of provable damages, res judicata, and/or collateral estoppel."[4]  (Id. ¶ 35.)  Notably, L&R did not thereafter move to amend to add any of these claims.

For its Counterclaims, L&R argues that (1) TWG's trademark registrations must be cancelled because L&R was a prior user of the octagonal box design and TWG's use of the design caused L&R damage; (2) L&R is not infringing on the octagonal box design and it is entitled to declaratory relief on that point; (3) TWG's acts constitute trademark/trade dress infringement in that they are wilful, likely to cause confusion in the public, and have caused L&R irreparable harm; (4) TWG's acts constitute unfair competition and trademark infringement under common law entitling L&R to damages and injunctive relief; and (5) TWG has been unjustly enriched as a result of its conduct.  (Id. at 6-12.) L&R seeks declaratory relief, damages, punitive damages, attorneys' fees, costs, and the cancellation of TWG's trademark registration.  (Id. at 12-13.)

---

[3] All page references to filed documents will refer to the Court's ECF pagination, not the pagination of the original documents.

[4] Of note, L&R did not plead, and did not disclose in its joint status report, that it intended to pursue claims of inequitable conduct and unclean hands.  Nor did it later seek to amend its pleadings to raise these claims.

1    In its First Amended Answer to L&R's Counterclaim (ECF
2  No. 26), TWG raises several affirmative defenses, including, as
3  its Second Affirmative Defense, that L&R's use of the octagonal
4  box was unlawful because it had not complied with state and local
5  laws.  (ECF No. 26 ¶ 40.)  In addition, TWG's affirmative
6  defenses generally contend that any use by L&R prior to TWG's
7  filing of its trademark application was insufficient to give rise
8  to L&R's trademark claims and was limited to the geographic scope
9  of those sales as of the time that TWG filed its application.
10  (Id. at pp. 5-7.)

11

12    **B.    TWG and L&R's Motions for Summary Judgment**

13

14    Following discovery, TWG filed its Motion for Summary
15  Judgment.  (ECF No. 56.)  TWG generally alleges that there is no
16  material issue of fact on its infringement or prior use claims,
17  as well as no genuine issue of material fact on L&R's affirmative
18  defenses, and that, as a matter of law, TWG is entitled to
19  summary judgment on each of its claims.  ( Id. at 2-16.)  In
20  addition, TWG contends that L&R is not entitled to a damages
21  award.  (Id. at 16-19.)
22    Despite the Court's Pretrial Order limiting the parties to a
23  single motion for summary judgment (ECF No. 27), L&R then filed
24  two such motions (and both parties thereafter filed the
25  additional summary judgment motions).  First, L&R Moved for
26  Partial Summary Judgment on TWG's Amended Second Affirmative
27  Defense (ECF No. 58).
28  ///

1  TWG thereafter filed its Statement of Non-Opposition to L&R's

2  Motion and Notice of Withdrawal of its Second Affirmative

3  Defense.  (ECF No. 67.)

4       Second, L&R filed its Motion for Summary Judgment on its

5  Counterclaim for Cancellation of TWG's trademark registration.

6  (ECF No. 60.)  In this Motion, L&R argues that it is entitled to

7  the trademark rights for the octagonal box design and that

8  cancellation of L&R's trademark registration is warranted

9  because: (1) it was a prior user of the equal-sided octagon-

10 shaped box; and (2) TWG engaged in unlawful and inequitable

11 conduct before the U.S. Patent and Trade Office ("USPTO") because

12 it had knowledge of and failed to disclose to the USPTO of "the

13 prior creation, use and sale of a virtually identical design by

14 L&R" while TWG's patent application was allegedly pending.  (Id.

15 at 20, see also id., at 10-22.)  In its Opposition to L&R's

16 motion (TWG Opposition, ECF No. 68), TWG first asserts that L&R's

17 prior use arguments are unsupported by admissible evidence, there

18 are no genuine material fact issues, and L&R's legal theory is

19 unsupported.  (Id. at 6-13.)  Regarding L&R's inequitable conduct

20 claims, TWG first notes that this claim is unpleaded and L&R

21 never sought to amend to raise this claim.  (Id. at 13-16.)

22 Furthermore, because this claim sounds in fraud, TWG contends

23 that L&R was required to, but has not, satisfied Federal Rule of

24 Civil Procedure 9(b)'s particularity requirements.[5]  (Id. at

25 16-17.)

26 ///

27 _____

28       [5] Unless otherwise stated, all further references to "Rule"
   or "Rules" will be to the Federal Rules of Civil Procedure.

1    TWG thereafter filed its Contingent Motion for Summary

2  Judgment on L&R's Cancellation Counterclaim.  (<u>See</u> ECF Nos. 68,

3  69.)  This Motion is contingent on the Court first finding that

4  L&R properly pleaded this ground for cancellation, and that L&R's

5  cancellation legal theory is viable.  (<u>Id.</u>)

6    L&R then filed its Motion to Strike Declarations of Laurie

7  Jones and John Sutton and Cross-motion for Summary Judgment on

8  TWG's Claims Based on TWG's Unclean Hands.  (ECF No. 72.)  In

9  this Motion, L&R argues that "The Wine Group, LLC" is not the

10 owner of the trademark registrations at issue, rather some third

11 party company, "The Wine Group, Inc." actually owns the trademark

12 registration.  Therefore, L&R contends that the declarations of

13 L. Jones and J. Sutton (attached to TWG's MSJ, ECF No. 56, Exs. 3

14 and 4), who are the Chief Marketing Officer (L. Jones) and

15 Executive Vice President and General Counsel (J. Sutton) contain

16 false statements about TWG's ownership of the trademark

17 registrations and should therefore be stricken.  (ECF No. 72, at

18 7-12.)  In addition, L&R contends that summary judgment on the

19 cancellation claim is warranted on the basis that TWG has unclean

20 hands because it made false statements regarding its ownership of

21 the 1999 trademark both to the USPTO as well as to this Court.

22    In its Opposition (ECF No. 84) to L&R's Motion to Strike

23 Declarations of L. Jones and J. Sutton and Cross-motion for

24 Summary Judgment (ECF No. 72), TWG asserts that L&R's Motion is

25 frivolous and sanctionable.

26 ///

27 ///

28 ///

1  Specifically, TWG: (1) notes that this is another unpleaded claim
2  by L&R; (2) asserts that L&R conducted no discovery on this
3  claim; and (3) contends that this is, in essence, a fraud claim
4  and that L&R had failed to state the alleged fraud with
5  particularity pursuant to Rule 9(b), or support its position with
6  any law.[6]  (Id. at 4-5.)

7      Substantively, TWG asserts that TWG, Inc. and TWG, LLC are
8  effectively the same company, as "the 'LLC' is the parent company
9  and the 'Inc.' is a wholly owned subsidiary whose primary purpose
10 is to hold various state licenses."  (Id. at 10-11.)  In
11 addition, TWG asserts there is a complete unity of control
12 between the two companies: "[t]hey have the same officers, same
13 offices, same day to day decision-makers and the same ultimate
14 owners."  (Id. at 11.)  In essence, TWG contends that it is
15 immaterial, as a matter of fact or law, whether the "LLC" or
16 "Inc." is listed on the trademark registrations related to the
17 octagonal box design.

18     Finally, TWG filed its Motion for Summary Judgment on L&R's
19 unclean hands defense, which is contingent on the Court first
20 finding that L&R (a) has properly pleaded this ground for
21 cancellation, and (b) its legal theory is viable.  (ECF No. 86.)
22 L&R opposes TWG's Motion.  (ECF No. 92.)
23 ///
24 ///
25 ///

26 ――――――――――――――――――
27     [6] TWG notes that L&R's other unpleaded claims are the claim
   of inequitable conduct in the prosecution of a design patent and
   unclean hands due to alleged intentional copying of L&R's
28 octagonal box.  (ECF No. 84 at 3 n.1).

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.

///

1   <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45

2   (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

3

4                            **ANALYSIS**

5

6       Given the plethora of motions, the Court will first dispose

7   of several that are, in the Court's view, peripheral to the

8   fundamental dispute between the parties.

9

10      **A.   L&R's Motion for Partial Summary Judgment on TWG's**
            **Amended Second Affirmative Defense (ECF No. 58)**

11

12      L&R Moves for Partial Summary Judgment on TWG's Amended

13  Second Affirmative Defense (ECF No. 58), in which TWG argued that

14  L&R's use of the octagonal sided wine box was unlawful because it

15  had not complied with various state and local laws.   TWG

16  thereafter filed its Statement of Non-Opposition to L&R's Motion

17  and Notice of Withdrawal of its Second Affirmative Defense.   (ECF

18  No. 67.)   Because TWG withdrew its Second Amended Defense, L&R's

19  Motion for Summary Judgment on TWG's Amended Second Affirmative

20  Defense (ECF No. 58) is denied as moot.

21

22      **B.   Unpleaded Claims for Inequitable Conduct and Unclean**
            **Hands**

23

24      In its Answer and Counterclaim, L&R asserted that after

25  discovery, "there is likely to be evidence that TWG's claims are

26  barred in whole or in part by the doctrines of unclean hands,

27  waiver, acquiescence, absence of provable damages, res judicata,

28  and/or collateral estoppel."   (ECF No. 8 ¶ 35.)

                                12

1  However, L&R indicated in the Joint Status Report that it did not

2  contemplate amending the pleadings (ECF No. 15 at page 4) and L&R

3  did not thereafter seek to amend its Complaint to add any of

4  these claims.  Despite this, L&R has repeatedly raised unpleaded

5  claims in its subsequent motions.[7]

6      On a motion for summary judgment, Plaintiffs' allegations

7  and theories of liability are confined to those found in the

8  operative complaint. <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271,

9  1292 (9th Cir. 2000) ("A complaint guides the parties' discovery,

10  putting the defendant on notice of the evidence it needs to

11  adduce in order to defend against the plaintiff's allegations.");

12  <u>Insurance Company of North America v. Moore</u>, 783 F.2d 1326,

13  1327-28 (9th Cir. 1986) (holding, where plaintiff argued it was

14  entitled to relief on claim for breach of implied covenant of

15  good faith and fair dealing, but had failed to plead such claim,

16  "district court did not err in refusing to award relief on [the]

17  unpleaded cause of action").  Generally, "[f]ailure to plead an

18  affirmative defense [] results in a waiver of that defense."

19

20      [7] In raising these claims, L&R simply asserts that after
   discovery it found facts that support its contentions.  (<u>See</u>
21  Opposition to TWG's Motion for Summary Judgment, ECF No. 70 at
   13.)  However, L&R never sought leave to amend its pleadings.  In
22  addition, although Rule 15(b) provides that "[w]hen an issue not
   raised by the pleadings is tried by the parties' express or
23  implied consent, it must be treated in all respects as if raised
   in the pleadings," the Court finds that TWG did not consent,
24  either explicitly or implicitly, to permit L&R to raise these
   unpleaded claims discussed herein, even if it did not object to
25  evidence introduced by L&R that is relevant to these unpleaded
   claims.  The introduction of evidence that directly addresses a
26  pleaded issue does not put the opposing party on notice that an
   unpleaded issue is being raised.  <u>Patelco Credit Union v. Sahni</u>,
27  262 F.3d 897, 906-907 (9th Cir. 2001).  Here, TWG has opposed
   both L&R's unpleaded claims, as well as L&R's evidence supporting
28  those claims.

1   <u>Enlow v. Salem-Keizer Yellow Cab Co., Inc.</u>, 389 F.3d 802, 819

2   (9th Cir. 2004) (citation omitted).  However, the failure to

3   plead a defense is not <u>necessarily</u> a waiver, as the court can

4   permit a party to raise affirmative defenses through a subsequent

5   motion.  <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1023 (9th

6   Cir. 2010).  The defense may be raised later if the delay in

7   raising the defense does not prejudice the plaintiff.  <u>Owens v.</u>

8   <u>Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 713 (9th Cir.

9   2001).

10

11           **1.   Inequitable Conduct Claims in L&R's Motion for**
                    **Summary Judgment on its Cancellation Counterclaim**
12                  **(ECF No. 60) and TWG's Contingent Motion for**
                    **Summary Judgment (ECF No. 69)**

13

14       First, L&R contends in its Motion for Summary Judgment on

15   its Counterclaim for Cancellation of TWG's Trademark Registration

16   (ECF No. 60) that TWG engaged in inequitable and unlawful conduct

17   in prosecuting its design patent application.[8]  (<u>Id.</u> at 18-22.)

18   Specifically, L&R argues that during the pendency of TWG's design

19   patent application for its octagon-shaped box design, TWG became

20   aware that L&R was also engaged in creating and manufacturing an

21   octagon-shaped box, but failed to disclose this information to

22   the USPTO.  (<u>Id.</u> at 20.)

23   ///

24   ///

25   _____

26       [8] L&R's primary argument in its motion for summary judgment
     on its cancellation counterclaim is that cancellation of TWG's
27   trademark registration is warranted because L&R was a prior user
     of the octagon-box design.  (ECF No. 60 at 6-10.)  That argument
28   was pleaded in L&R's Answer and Counterclaim (ECF No. 8) and will
     be addressed separately below.

                                14

1   L&R contends that this was material information and that TWG's

2   failure to disclose the information makes its use of the octagon-

3   shaped design an unlawful use, therefore, cancellation of its

4   trademark registration is warranted.  (<u>Id.</u> at 20-23.)

5       Notably, in its Answer and Counterclaim L&R did not plead

6   inequitable conduct regarding TWG's patent application and L&R

7   did not thereafter amend, or seek leave to amend, to add this

8   claim.  (<u>See</u> ECF No. 8.)  L&R also does not explain why it did

9   not raise this claim until after discovery had closed and

10  dispositive motions were filed, or why it could not have

11  discovered this issue earlier.

12      In addition, there is no patent claim at issue: all of L&R's

13  pleaded claims are based on trademark rights.  On that basis

14  alone, the Court could deny L&R's motion for summary judgment as

15  to this argument.  <u>See</u> <u>Coleman</u>, 232 F.3d at 1292-93 (permitting

16  an unpleaded new theory of liability at the summary judgment

17  stage would prejudice the party against whom the new theory is

18  being brought: the new claim should have been brought by means of

19  a motion to amend at an earlier stage of the litigation).

20      However, even were the Court to reach L&R's claim that TWG

21  engaged in inequitable conduct in its patent application, this

22  claim sounds in fraud, <u>see</u>, <u>e.g.</u>, <u>Kaiser Foundation Health Plan,</u>

23  <u>Inc. v. Abbott Laboratories, Inc.</u>, 552 F.3d 1033, 1048 (9th Cir.

24  2009); <u>Hydranautics v. FilmTec Corp.</u>, 204 F.3d 880, 883 n.1 (9th

25  Cir. 2000), and a fraud claim must be pleaded with particularity

26  pursuant to Rule 9(b).  "A pleading is sufficient under Rule 9(b)

27  if it identifies the circumstances constituting fraud so that the

28  defendant can prepare an adequate answer from the allegations."

1  <u>Neubronner v. Milken</u>, 6 F.3d 666, 671-72 (9th Cir. 1993)

2  (internal quotations and citations omitted).  "The complaint must

3  specify such facts as the times, dates, places, benefits

4  received, and other details of the alleged fraudulent activity."

5  <u>Id.</u> at 672.

6       Here, L&R alleges that TWG, in particular TWG's General

7  Counsel, John Sutton, possessed the information regarding L&R's

8  creation and use of an octagonal-sided box and failed to provide

9  that information to the USPTO.  (ECF No. 60 at 20-21.)  However,

10 L&R fails to provide specific facts that would support a claim

11 that any individual at TWG, including Mr. Sutton, was aware of

12 L&R's creation and use of an octagonal-sided box and then

13 deliberately failed to disclose that information to the USPTO.

14 L&R also fails to sufficiently explain why that information was

15 material to the patent application or provide any persuasive

16 authority that would support the conclusion that the alleged

17 inequitable conduct as to the patent application should result in

18 the cancellation of TWG's trademark registration.  In sum, even

19 were the Court to consider L&R's claim on the merits, L&R's claim

20 would fail because L&R has not pleaded its claims with

21 particularity pursuant to Rule 9(b).

22      Therefore, for the reasons set forth above, L&R's Motion for

23 Summary Judgment on its Counterclaim for Cancellation of TWG's

24 Trademark Registration (ECF No. 60) on the basis that TWG engaged

25 in inequitable and unlawful conduct in prosecuting its design

26 patent application is denied.  In addition, because the Court

27 denies L&R's Motion for Summary Judgment on its Counterclaim for

28 Cancellation of TWG's Trademark Registration (ECF No. 60).

1  TWG's contingent cross-motion (ECF No. 69) is denied as moot.[9]

2  L&R's prior use argument in its Motion for Summary Judgment on

3  its Counterclaim for Cancellation of TWG's Trademark Registration

4  (ECF No. 60) survives and will be discussed below.

5  ///

6  ///

7  ///

8  ///

9  ///

10  ───────────────────────────

11      [9] The Court notes that L&R also raises what is effectively
another unpleaded unclean hands argument in its Opposition to
12  TWG's Motion for Summary Judgment (ECF No. 70) and its Contingent
Motion for Summary Judgment on L&R's Cancellation Claim (ECF
13  No. 83).  Specifically, L&R argues that TWG copied L&R's
octagonal-sided box design.  L&R contends that TWG employees were
14  at a symposium in Sacramento, California, in 2009 and that L&R
brought an octagonal-sided box to that show, therefore the
15  circumstantial evidence supports the conclusion that TWG
unlawfully copied L&R's box design and therefore TWG's
16  inequitable conduct warrants cancellation of its trademark
registration.  (ECF No. 70 at 9-10; ECF No. 83 at 4-5.)  Again,
17  this is an unpleaded claim and L&R never sought to amend its
pleadings to add it.  Furthermore, this argument also sounds in
18  fraud and L&R's vague and conclusory allegations do not satisfy
the requirements of Rule 9(b).  In addition, L&R does not provide
19  any specific legal or factual basis for this claim.  In
particular, L&R provides no facts that suggest that it displayed
20  the octagonal-sided box in Sacramento, or that TWG knew of L&R's
box or had the opportunity to see the box at the symposium.
21  Instead, L&R merely implies that TWG, through some unexplained
series of events and motivations, managed to copy L&R's wine box
22  design.  Further, there does not appear to be a reasonable
likelihood that any factual support for this claim will be
23  developed, given that discovery had closed and L&R never sought
to amend its pleadings or sought discovery as to this particular
24  set of facts.  In short, this appears to be a frivolous argument,
designed to harass TWG and increase the cost of litigation.
25  Although L&R's frivolous arguments arise here in the context of
their opposition to TWG's motions, the issue of frivolous
26  representations arises again in greater depth when the Court
discusses L&R's next unpleaded claim, raised in its Motion to
27  Strike Declarations of L. Jones and J. Sutton and Cross-motion
for Summary Judgment on TWG's Claims Based on TWG's Unclean Hands
28  (ECF No. 72.)

**2.    Motion to Strike Declarations of L. Jones and J. Sutton and Cross-motion for Summary Judgment on TWG's Claims Based on TWG's Unclean Hands (ECF No. 72.) and TWG's Contingent Cross Motion for Summary Judgment (ECF No. 86)**

**(a)   Motions**

In its Motion to Strike Declarations of L. Jones and J. Sutton and Cross-motion for Summary Judgment on TWG's Claims Based on TWG's Unclean Hands (ECF No. 72.), L&R argues that "The Wine Group, LLC," which is a Delaware corporation, is not the owner of the 1999 trademark registration for the octagonal-sided box design (reg. no. 3,009,688), rather a California company, "The Wine Group, Inc.," actually owns the trademark registration. (See ECF No. 72; L&R's Statement of Undisputed Facts, ECF No. 72-2 at 2-5.)  Therefore, L&R contends that "The Wine Group, LLC" falsely represented to the Trademark Office that it had previously obtained Trademark Registration no. 3,009,688 for the octagonal box design, when it applied for the registration that ultimately became registration no. 3,800,596, as that registration actually belonged to "The Wine Group, Inc." (ECF No. 72 at 7-12.)  L&R argues that TWG thereafter repeated these false statements to this Court, both in its complaint, as well as in the declarations (attached to TWG's MSJ, ECF No. 56, Exs. 3 and 4) of Laurie Jones, the Chief Marketing Officer, and John Sutton, the Executive Vice President and General Counsel.[10]  (ECF No. 72, at 7-12.)

---

[10] For brevity's sake, in this section of the Court's Order "The Wine Group, LLC," will hereinafter be referred to as either "TWG, LLC" or TWG and "The Wine Group, Inc.," will be referred to as "TWG, Inc."

L&R moves to strike those declarations and contends that it is entitled to summary judgment on its cancellation claim on the basis that TWG has unclean hands because of these allegedly false statements about its ownership of registration number 3,009,688. (Id. at 9-12.)

These are remarkable allegations.  In essence, L&R is contending, by means of this unpleaded unclean hands claim, that TWG LLC has engaged in fraud against both the Trademark Office and the Court by first registering the octagonal box on the basis that it owned the registration, when in fact the registration was owned by an unrelated third party company named TWG, Inc., then by initiating this lawsuit against L&R on the basis of its fabricated claim of ownership of the octagonal-sided wine box design, and then compounding the fraud by using TWG's officers and counsel (both in house and outside) to deceive the Court (and presumably the Trademark Office as well) as to the ownership of TWG.

One would think that before filing this motion, L&R's counsel would have conducted extensive discovery and marshaled the evidence and law in support of these claims and thought long and hard about Federal Rule of Civil Procedure 11(b)'s admonitions regarding representations to the Court before filing this motion.[11]  One would be wrong.

---

[11] Rule 11(b), "Representations to the Court," states, in full, that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented
>                                                    (continued...)

1     First, L&R has raised this unpleaded claim after the close

2  of discovery without seeking or obtaining leave to amend from the

3  Court.  Again, L&R does not explain why it did not raise this

4  claim until after discovery had closed and dispositive motions

5  were filed, or why it could not have discovered this issue

6  earlier.  As discussed above, in the context of L&R's other

7  unpleaded claims, this motion could be denied on this basis

8  alone.  Coleman, 232 F.3d at 1292-93. Second, this is a fraud

9  claim and therefore L&R was compelled by Rule 9(b) to plead fraud

10  with particularity.  See, e.g., Neubronner v. Milken, 6 F.3d at

11  671-72.  L&R has not done so.

12  ///

13  ///

14  ///

15  ///

16

17     [11](...continued)
    party certifies that to the best of the person's
18   knowledge, information, and belief, formed after an
    inquiry reasonable under the circumstances:
19
    (1) it is not being presented for any improper purpose,
20   such as to harass, cause unnecessary delay, or
    needlessly increase the cost of litigation;
21
    (2) the claims, defenses, and other legal contentions
22   are warranted by existing law or by a nonfrivolous
    argument for extending, modifying, or reversing
23   existing law or for establishing new law;

24   (3) the factual contentions have evidentiary support
    or, if specifically so identified, will likely have
25   evidentiary support after a reasonable opportunity for
    further investigation or discovery; and
26
    (4) the denials of factual contentions are warranted on
27   the evidence or, if specifically so identified, are
    reasonably based on belief or a lack of information.
28

1     Specifically, although the entire basis of L&R's contentions
2  rests on "TWG, LLC" and "TWG, Inc." being two separate companies,
3  and although L&R had ample opportunity during the course of this
4  litigation to investigate this issue, L&R relies almost entirely
5  on conclusory allegations and inferences to support its claims.
6  Specifically, L&R's motion is rife with allegations that imply
7  that TWG, LLC was completely independent from TWG, Inc., and that
8  the LLC used its similar name to deceive the Trademark Office and
9  the Court for the purpose of improperly obtaining the trademark
10  and, ultimately, of depriving L&R its rights to the octagonal-
11  sided wine box design.  The only evidence that L&R relies on
12  consists of a few documents that include "TWG, LLC" and "TWG,
13  Inc." names, (see e.g., L&R's Statement of Undisputed Facts in
14  Support of Motion, ECF 72-2), but L&R does not appear to have
15  done any research or investigation (e.g., conducted discovery) to
16  determine whether these companies were related in any way.

17     In response, TWG asserts that the "LLC" is the parent
18  company and the "Inc." is a wholly owned subsidiary and
19  functionally there is no difference between the two as they "have
20  the same officers, same offices, same day to day decision-makers
21  and the same ultimate owners."  (ECF 84 at 10-11; see also ECF
22  No. 87, Decl. of J. Sutton at ¶¶ 2-8).  TWG states that the
23  "Inc." form exists primarily to hold certain alcohol licenses,
24  but TWG's officers and employees do not distinguish between the
25  corporate forms on a day-to-day basis.  (Id.)
26     In its Reply, L&R does not contest that TWG, LLC and TWG,
27  Inc. are effectively the same company, rather L&R argues,
28  nonsensically, that:

1    The issue is not one of justification by plaintiff as
     to whether 'Inc.' or 'LLC' means the same thing, but
2    rather one of plaintiff's conduct, and whether that
     conduct which involved false statements of ownership of
3    the octagonal box design and a registration for that
     octagonal box design should be held by the Court
4    pursuant to principles of equity to bar plaintiff from
     recovering on its claims against the defendants.
5

6    (L&R's Reply, ECF No. 91 at 4.)  In other words, L&R contends

7    that even if both the "Inc." and "LLC" are legitimate forms of

8    the same company, TWG still made false statements compelling

9    cancellation of its trademark when it used its prior registration

10   (under the "Inc." form) as the basis for its later registration

11   (using the "LLC" form).

12       For a moment, the Court will set aside its conclusion that

13   this argument is entirely baseless and presented for no other

14   purpose than harassment and delay.  Even were the Court to assume

15   the truth of L&R's claim that the difference between TWG's

16   corporate forms should have been raised to the Trademark Office,

17   L&R presents no compelling argument that TWG's alleged failure to

18   disclose this difference in corporate forms would have been

19   material to its trademark registration.  A material false

20   statement is one that would have resulted in the refusal of the

21   registration.  Orient Express Trading Co. v. Federated Dept.

22   Stores, 842 F.2d 650, 653 (2d Cir. 1988).  Here, L&R presents no

23   persuasive evidence or law that would lead the Court to conclude

24   that the Trademark Office would have concluded that TWG, LLC made

25   a material misrepresentation of fact when it did not disclose

26   that the original trademark was held by the "Inc." form of the

27   company rather than the "LLC" form.

28   ///

1    Furthermore, L&R presents no persuasive evidence that
2    supports the conclusion that the declarations of Laurie Jones and
3    John Sutton[12] should be stricken because they fail to
4    differentiate between TWG LLC and TWG, Inc. (see ECF No. 72-1 at
5    8-9), particularly given L&R's implicit concession that "TWG,
6    LLC" and "TWG, Inc." are different forms of the same company, ECF
7    No. 91 at 4).  L&R asserts that striking the declarations is
8    warranted because "[t]he declarations are intentionally crafted
9    to mislead the Court because they conveniently refer to 'TWG' so
10   as to mislead as to whether the references are to the plaintiff,
11   The Wine Group, LLC or to another entity, The Wine Group, Inc."
12   (ECF No. 72-1 at 8.)  However, as is made clear in Sutton's
13   declaration, and as would have been made clear had L&R actually
14   investigated this issue, TWG's officers and employees considered
15   TWG, LLC and TWG, Inc. to be functionally the same company.
16   Therefore, L&R's assertion that TWG, LLC, and Sutton and Jones in
17   particular, were making deliberate misrepresentations to this
18   Court lacks merit.

19   In sum, the Court concludes that the unpleaded unclean hands
20   claims, raised in L&R's Motion to Strike Declarations of L. Jones
21   and J. Sutton and Cross-motion for Summary Judgment on TWG's
22   Claims Based on TWG's Unclean Hands (ECF No. 72.), baselessly
23   alleges fraud and misrepresentation by TWG against the Trademark
24   Office and this Court.

25   ///

26

27        [12] In its Reply L&R adds Sutton's and Jones's new
     declarations, ECF Nos. 87-6 and 87-3 to the prior ones, ECF
28   Nos. 56-3 and 56-4, to its Motion to Strike.

In filing this motion, L&R, through its counsel: (1) raised an unpleaded claim, having failed to previously seek leave to amend to add this unclean hands defense; (2) failed to plead fraud with particularity as required by Rule 9(b); and, most egregiously, (3) alleged that TWG LLC, and its employees, specifically, J. Sutton and L. Jones, were committing a fraud against the Trademark Office and this Court when there was no reasonable non-frivolous evidentiary basis for these claims, minimal investigation would have refuted this argument, and there was no reasonable legal basis to raise this argument.

For the reasons set forth above, L&R's motion (ECF No. 72.) is denied.  Because this motion is denied, TWG's Contingent Cross-Motion for Summary Judgment on L&R's Claims of Unclean Hands (ECF No. 86) is denied as moot.

### (b)   Sanctions

In addition, TWG seeks sanctions against L&R on the basis that this motion is frivolous.  (See TWG's Opposition, ECF No. 84 at 1).  The Court agrees that sanctions are warranted.

///
///
///
///
///
///
///
///

As discussed throughout this Memorandum and Order, L&R has repeatedly violated the Court's Pretrial Scheduling Order (ECF No. 27) by filing multiple motions for summary judgment, as well as repeatedly raising unpleaded claims in its dispositive motion practice following the close of discovery (see id. at §§ II, VI).[13]   Further, while zealous advocacy on behalf of clients is encouraged, lawyers must adhere to the Federal Rules of Civil Procedure, and the Court concludes that L&R's unclean hands and inequitable conduct claims violate Rule 11(b)'s requirements.

Specifically, because L&R's attorneys failed to conduct reasonable investigation and discovery into TWG's corporate forms, there was no basis in either the evidence or the law to raise these fraud allegations as an unclean hands defense in an unpleaded claim in this motion.  In addition, the Court has found no merit to L&R's claims that TWG copied the octagonal-sided wine box design or failed to comply with the patent requirements.

L&R's theory, that TWG engaged in various forms of fraud and inequitable conduct including (1) copying the octagonal box design, (2) obtaining the trademark for the design based on misrepresentations about the corporate form, and then (3) misrepresenting to the Court that it had rights to the design, does not appear on the face of L&R's Answer and Counterclaim, was not added by means of amendment either before or after discovery, and lacks any persuasive evidentiary support.

_____

[13] The Court has not catalogued all of the times that L&R raises its unpleaded fraud, unclean hands, and inequitable conduct claims, but notes that L&R also raises these issues in its objections to TWG's factual statements.  (See, e.g., ECF No. 70-1)

1    The Court concludes that L&R's purpose in bringing this

2    motion, as well as more generally raising unpleaded allegations

3    of fraud and inequitable conduct, was "to harass, cause

4    unnecessary delay, or needlessly increase the cost of litigation"

5    for TWG in violation of Rule 11(b)(1).

6    In addition, by filing a multitude of frivolous claims and

7    motions, as discussed herein, L&R's counsel has violated

8    28 U.S.C. § 1927, which states that:

9         Any attorney or other person admitted to conduct cases
          in any court of the United States or any Territory
10        thereof who so multiplies the proceedings in any case
          unreasonably and vexatiously may be required by the
11        court to satisfy personally the excess costs, expenses,
          and attorneys' fees reasonably incurred because of such
12        conduct.

13   A § 1927 award requires a finding that the attorney to be

14   assessed not only multiplied the proceedings but did so

15   recklessly or in bad faith.  R.P. ex rel. C.P. v. Prescott

16   Unified Sch. Dist., 631 F.3d 1117, 1128 (9th Cir. 2011);

17   Goehring v. Brophy, 94 F.3d 1294, 1306 (9th Cir. 1996).  Such

18   "[b]ad faith is present when an attorney knowingly or recklessly

19   raises a frivolous argument, or argues a meritorious claim for

20   the purpose of harassing an opponent."  Keegan Management Co.

21   Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996).  When awarding

22   sanctions under § 1927, district courts have discretion in

23   determining whether sanctions are appropriate and, if so, in what

24   amount.  Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1995);

25   F.J. Hanshaw Enterprises, Inc. v. Emerald River Development,

26   Inc., 244 F.3d 1128, 1135 (9th Cir. 2001).

27   ///

28   ///

For the reasons discussed in this Memorandum and Order, the Court concludes that L&R's actions, specifically, filing multiple motions for summary judgment, arguing unpleaded claims without seeking leave to amend, and, most importantly, raising multiple baseless claims that could have exposed as false given any effort during discovery, were done recklessly and in bad faith by L&R.

Therefore, the Court concludes that sanctions are warranted for L&R's violations of both Rule 11 and § 1927. Subject to the directions in the conclusion of this Order, the parties are ordered to file briefs discussing what – not whether – sanctions are appropriate.

**C.   TWG's Motion for Summary Judgment (ECF No. 56) and L&R's Motion for Summary Judgment on its Counterclaim for Cancellation Based on L&R's Prior Use (ECF No. 60)**

The Court now turns to substance of the parties' trademark dispute.

///
///
///
///
///
///
///
///
///
///
///

27

1          1.    **Undisputed Facts**[14]

2

3          At all times relevant to this action, both TWG and L&R have

4    been corporations engaged in the production and sales of wine,

5    with TWG's headquarters located in California and L&R's located

6    in Lancaster, Pennsylvania.  (Complaint, ECF No. 1 at ¶ 3, L&R.'S

7    Statement of Undisputed Facts on its Motion for Summary Judgment

8    (Cancellation Claim) ("L&R SUF"), ECF 60-2, ¶ 1.)

9

10                  (a)  **L&R's Development of an Octagonal-Sided Wine**
                         **Box**

11

12         From 2007-2010, L&R was provided with a number of free

13   prototype octagon-shaped boxes by a manufacturer.[15]  (TWG SUF

14   ¶ 30-33, 38; L&R SUF ¶ 5.)  L&R assembled, packed and labeled by

15   hand the blank equal-sided octagon-shaped boxes LR received from

16   the manufacturer between December 11, 2007 through October 12,

17   2009.  (L&R SUF ¶ 39.)

18
          _____

19         [14] The Court has reviewed the parties' statements of
     undisputed facts, disputed facts, and related filings, as well as
20   their objections.  In this background section, it is generally
     noted when the parties disagree on factual issues.  When disputes
21   are not noted, the facts as stated are the Court's determination
     of what is to be considered either undisputed, not subject to
22   legitimate dispute (e.g., TWG's ownership of trademark
     registration nos. 3,009,688 and 3,800,596), or otherwise
23   immaterial to deciding these Motions, even if the factual
     allegation is disputed by one party or the other.  The Court also
24   notes that various documents have been filed under seal by
     request of the parties, so while the Court has reviewed all the
25   documents, this Memorandum and Order may not refer in detail to
     particular items that were filed under seal.  The Court will cite
26   to the parties' statements of facts, but is relying on the
     underlying evidence cited by the parties related to each fact.

27         [15] L&R apparently never purchased any octagonal-sided wine
     boxes for the Tamanend brand because they were too expensive.
28   (TWG SUF ¶¶ 35-37).

1   However, L&R did not prepare a business plan, create marketing

2   materials, or otherwise publicly promote the Tamanend wine

3   outside of its Lancaster location.  (TWG SUF ¶¶ 41-43.)  L&R did

4   prepare a business plan for its LNO product, which went on sale

5   in 2010.  (Id. ¶ 44.)

6       If any wine was sold by L&R in the octagonal-shaped boxes,

7   and it is not clear that there was, those sales began in 2008 and

8   were limited to sales made from a single tasting room in its

9   Lancaster location of its "Tamanend" wine.[16]  (TWG SUF ¶¶ 40,

10  104; L&R SUF ¶¶ 6, 7, 11, 18, 24.)[17]  L&R does not have any sales

11  data that explicitly details sales of wine in the octagonal box

12  during this period.  (Id. ¶¶ 41, 44-46.)  In 2010, L&R began

13  selling its "Like no Other" or "LNO" wine product, which was

14  packaged in octagonal-sided boxes.  (Id. ¶¶ 44.)

15  ///

16

17      [16] As will be discussed in the analysis section, L&R has not
    met its burden of persuasively demonstrating that any wine was
18  sold from the Lancaster tasting room.  L&R does not have any
    records that specifically break down sales of the Tamanend wine
19  in the octagonal-sided boxes, the records it does have aggregates
    sales of Tamanend wine in both rectangular and octagonal boxes,
20  and there are no other records that explicitly illustrate any
    sales of Tamanend wine in the octagonal boxes, so it is not clear
21  what, if any sales, can be directly attributed to sales of the
    Tamanend wine from an equal-sided octagonal box.  (See, TWG SUF,
22  ECF No. 56-2 ¶¶ 44-48; TWG's Response to L&R's Statement of
    Undisputed Facts on its Motion for Summary Judgment (Cancellation
23  Claim), ECF No. 68-1 ¶ 18.)  In addition, the only witnesses who
    claim to have seen Tamanend wine sold from the tasting room are
24  L&R's President, Linda Jones McKee and its Vice President,
    Richard Carey.  (TWG's Response to L&R's Statement of Undisputed
25  Facts on its Motion for Summary Judgment (Cancellation Claim),
    ECF No. 68-1, ¶ 4; see also TWG SUF ¶¶ 49-50.)
26
        [17] L&R claims that it displayed the box at festivals and
27  used the box as a marketing tool, but it does not dispute that
    any sales were limited to the Lancaster tasting room.  (L&R SUF
28  at 40.)

1   L&R first sold the LNO wine product in its octagonal-sided box
2   throughout the state of Pennsylvania in July 2011, although it
3   may have been selling LNO from its Lancaster location starting in
4   April 2010 and Alaby also sold the LNO wine beginning in April
5   2010.  (Id. at ¶¶ 104-05.)

6

7                    **(b)   TWG's Development of an Octagonal-Sided Wine
                           Box**
8

9       In 1999, TWG filed an application for an octagonal box
10  design and was thereafter awarded the trademark registration
11  no. 3,009,688   (See TWG's Statement of Undisputed Facts in
12  support of its Motion for Summary Judgment ("TWG SUF"), ECF
13  No. 56-2 ¶ 1; ECF No. 56-4, Ex. 1 to the Decl. of J. Sutton).  In
14  2008, TWG began developing a business plan for selling premium
15  wine in octagonal boxes.  (TWG SUF ¶¶ 9-12.)

16      On March 3, 2009, TWG filed applications for trademark
17  registration of its equal-sided octagonal wine box design.  (TWG
18  SUF ¶¶ 2-4.)  In 2010, TWG obtained trademark registrations for
19  the "Octavin" name it had given the box design (registration
20  no. 3,775,740)  (Complaint, ECF No. 1, ¶¶ 12-13 (box
21  illustration).)  TWG began selling wine in the Octavin
22  equal-sided octagonal box in February 2010.  (Id. ¶ 16.)
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

30

1  TWG sells wine in the Octavin octagonal-sided boxes in all fifty

2  states and, in particular, began selling this wine in

3  Pennsylvania in April 2010.[18]  (Id. ¶¶ 18, 20.)

4      The equal-sided octagonal wine boxes used by both TWG and

5  L&R are very similar in shape, inherently distinctive, not

6  functional, and are more expensive than rectangular wine boxes.

7  (L&R SUF, ECF 70-1 ¶¶ 22-27.)  The wines for which TWG and

8  Defendants use the equal-sided boxes are sold in the same

9  channels of trade, namely at retail to consumers, although L&R's

10 wines are also sold from their Lancaster, Pennsylvania, location.

11 (Id. ¶ 28.)  It is undisputed that L&R believes that consumers

12 who see the wines in the equal-sided octagonal box will believe

13 they originate from the same source.  (Id. ¶ 29.)

14

15              **2.   Parties' Contentions**

16

17     In its Motion for Summary Judgment (ECF No. 56), TWG first

18 contends that there is no genuine issue of fact as to its

19 infringement claim because (a) L&R admitted the key factors to

20 establish trademark infringement (to support its counterclaim and

21 prior use defenses), and (b) TWG has established that it had

22 national and exclusive rights to the octagonal-shaped box prior

23 to L&R's use of the mark.  (Id. at 9-10.)

24 ///

25

26     [18] Specifically, TWG is the prior user in each of the nine
   States where LNO has been sold, and (with the possible exception
27 of L&R's tasting room in Lancaster), throughout Pennsylvania (TWG
   SUF ¶¶ 20, 85, 106), and TWG has used the octagonal box in all of
28 the other 41 States (TWG SUF ¶ 18).

Second, TWG contends that L&R cannot succeed on its prior use claim that L&R was using its octagonal-shaped box in 2009, with the possible limited exception that L&R may have been selling some small volume of wine in octagonal-sided boxes from a single tasting room at its Lancaster, Pennsylvania, location before TWG filed its trademark application.  (Id. at 12-20.)  Furthermore, TWG contends that L&R has failed to adequately plead its First Amendment affirmative defense and that L&R is not entitled to damages on its counterclaims.  (Id. at 21-26.)

In its Opposition (ECF No. 70), L&R contends that TWG cannot prevail on its motion because the facts establish that there is a genuine issue of fact as to whether L&R was a prior user and, under relevant Ninth Circuit precedent, even a single sale is sufficient to establish that it has the senior rights to the octagonal box design under trademark law.[19]  (Id. at 6-9.) Regarding its First Amendment affirmative defense, L&R contends that there is a genuine issue of material fact as to whether L&R may use the octagonal-sided box under their First Amendment right to free expression.  (Id. at 14-15.)  Additionally, in its Motion for Summary Judgment on its Counterclaim for Cancellation (ECF No. 60), L&R contends that it is entitled to summary judgment on its claim that TWG's trademark must be cancelled because L&R was the prior user of the octagonal-shaped box.  (Id. at 12-18.)

---

[19] L&R also raises its arguments that TWG copied L&R's box design and that TWG made fraudulent claims to the Trademark Office and this Court regarding TWG, LLC versus TWG, Inc. (Opposition, RCF No. 70 at 9-12, 13-14, 15-16.)  Having already considered and rejected these arguments, the Court will not address them again.

### 3.   Lanham Act Trademark Infringement Standard

The Lanham Act creates a comprehensive framework for regulating the use of trademarks and protecting them against infringement, dilution, and unfair competition.  15 U.S.C. § 1051 et seq.  The Act allows for civil liability against "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . ., which (A) is likely to cause confusion . . . as to the origin, sponsorship, or approval" of the goods or services.  15 U.S.C. § 1125(a)(1).  Under the Lanham Act, to prevail on its trademark infringement claim, a plaintiff "'must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'"  Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting Dep't of Parks & Recreation v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006)).

Regarding the first prong, the protectable ownership interest, the court noted in Network Automation that "'[w]hen the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected.'"  Network Automation, 638 F.3d at 1145 (quoting AMF Inc. v. Sleekcraft Boats, 599 F.2d 348 (9th Cir. 1979).  "It is axiomatic in trademark law that the standard test of ownership is priority of use.

///

To acquire ownership of a trademark, it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." <u>Sengoku Works Ltd. v. RMC Int'l, Ltd.</u>, 96 F.3d 1217, 1219 (9th Cir. 1996) (citing 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 16.03 (3d ed. 1996)).  Therefore, a party pursuing a trademark claim must meet a threshold "use in commerce" requirement.

Turning to the second factor, consumer confusion, courts consider eight non-exhaustive factors relevant to determining whether consumers may be confused by related goods:

> [1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines.'

<u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir. 1979).


**4.  Analysis**


The Court notes that "'[b]ecause of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena.'" <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1140 (9th Cir. 2002) (quoting <u>Interstellar Starship Servs., Ltd. v. Epix, Inc.</u>, 184 F.3d 1107, 1109 (9th Cir. 1999).  Here, however, the Court concludes that summary judgment is appropriate because TWG and L&R are both contending the other infringed on their trademark, and to do so, both have admitted key factors required to find trademark infringement.

Specifically, TWG owns the trademark registration to an octagonal wine box design and both TWG and L&R assert that their octagonal wine boxes are very similar in shape, inherently distinctive, not functional, and are more expensive than rectangular wine boxes. (L&R SUF, ECF 70-1 at ¶¶ 22-27.)  In addition, the parties agree that the wines they sell in the disputed equal-sided wine boxes are sold in the same channels of trade, namely, at retail to consumers, as well as at L&R's Lancaster location.  (Id. ¶ 28.)  In sum, the parties concede that the consumer confusion factor is satisfied: consumers would likely be confused by the similarity of TWG's and L&R's octagonal-sided wine boxes.

Therefore, what is at issue here is the first factor: who has the protectable ownership interest in the mark – the octagonal-sided wine box design – and what is the geographic scope of those rights?  Specifically, the primary issue is whether L&R has met its burden of establishing that it had common law rights as a prior user of the octagonal-sided boxes.  In addition, if L&R's use does predate TWG's, the question becomes what is the geographic scope of L&R's rights to the mark?

        **(a)   No Genuine Issue of Material Fact on L&R's Prior Use Claim for Cancellation or TWG's Infringement Claim**

As the owner of a Federal registration, TWG is presumed to be the owner with national and exclusive rights as of the filing date of its trademark application: March 3, 2009.
///

See 15 U.S.C. §§ 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . . ., of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce . . . ."); 1115(a) (any trademark registration "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . ."). See also, Zobmondo Entertainment, LLC v. Falls Media, LLC, 602 F.3d 1108, 1114 (9th Cir. 2010) ("Although the plaintiff in a trademark action bears the ultimate burden of proof that his or her mark is valid, federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." (citing 15 U.S.C. §§ 1057(b), 1115(a)).

However, L&R contends that the presumption does not apply here because it was a prior user of the octagonal-sided box design.  Prior use, including both sales and non-sales activities, may be sufficient to vest trademark rights in a prior user, based on the court's evaluation of the totality of the circumstances.  See Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1206 (9th Cir. 2012).  L&R contends that it began using an octagonal-sided box design prior to TWG's application, that this use was continuous, and therefore it is the senior user of the mark and cancellation of TWG's trademark is therefore warranted.  As the moving party on the prior use claim, L&R bears the burden of demonstrating its prior use.

Under the Lanham Act, a registration may be cancelled by the reviewing court where the registered mark resembles the "mark or trade name previously used in the United States by another and not abandoned."  11 U.S.C. §§ 1052(d), 1064, 1119.  "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."  Sengoku Works, 96 F.3d at 1219.

"While the first use need not be extensive, the use must be bona fide and commercial in character."  Department of Parks and Recreation for State of Cal. v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1125-26 (9th Cir. 2006).  The Lanham Act requires that prior use be actual "use in commerce."  See 15 U.S.C. § 1127.[20] There are two elements to the "use in commerce" requirement, "(1) an element of actual use, and (2) an element of display." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1159 (9th Cir. 2001)

[20] 15 U.S.C. § 1127 provides, in relevant part, that: The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—

(1) on goods when—

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce . . . .

1  In addition, the "use in commerce" must be continuous and
2  "the litigant attempting to establish priority of commercial use
3  must demonstrate both adoption of the marks and '[u]se in a way
4  sufficiently public to identify or distinguish the marked goods
5  in an appropriate segment of the public mind as those of the
6  adopter of the mark.'"   Id. (quoting Brookfield Commc'ns, Inc. v.
7  West Coast Entm't Corp., 174 F.3d 1036, 1052 (9th Cir. 1999)
8  (quotation marks and citation omitted)).

9      In considering the elements of the "use in commerce" test,
10  the Court applies a "totality of the circumstances" approach,
11  which turns on "evidence showing, first, adoption, and, second,
12  use in a way sufficiently public to identify or distinguish the
13  marked goods in an appropriate segment of the public mind."
14  Rearden LLC, 683 F.3d at 1205 (quoting New West Corp. v. NYM Co.
15  of Cal., 595 F.2d 1194, 1200 (9th Cir. 1979) (internal quotation
16  and citation omitted)).   Notably,

17      evidence of actual sales, or lack thereof, is not
        dispositive in determining whether a party has
18      established "use in commerce" within the meaning of the
        Lanham Act.  Instead, we have acknowledged the
19      potential relevance of non-sales activity in
        demonstrating not only whether a mark has been
20      adequately displayed in public, but also whether a
        service identified by the mark has been "rendered in
21      commerce," 15 U.S.C. § 1127.

22  Id. at 1205.  In particular, "non-sales activities, may be
23  relevant in determining whether the 'used or displayed in the
24  sale or advertising of services,' 15 U.S.C. § 1127, element is
25  satisfied.  And, depending on the circumstances, the non-sales
26  activity may also be relevant to assessing whether a party has
27  satisfied the 'services are rendered in commerce,' [] element."
28  Id. (citation omitted).

1    Furthermore, to establish enforceable common law trademark
2    rights in a geographical area, a plaintiff must prove that, in
3    that geographic area, (1) it is the senior user of the mark, and
4    (2) it has established legally sufficient market penetration.
5    See, e.g., Credit One Corp. v. Credit One Financial, Inc.,
6    661 F. Supp. 2d 1134, 1138 (C.D. Cal. 2009) ("A party asserting
7    common law rights must not only establish that it is the senior
8    user, it must also show that it has 'legally sufficient market
9    penetration' in a certain geographic market to establish those
10   trademark rights." (quoting Glow Indus. Inc. v. Lopez,
11   252 F. Supp. 2d 962, 983 (C.D. Cal. 2002)).  The filing of a
12   trademark application freezes the geographic scope of the prior
13   user's claim.  Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749,
14   762 (9th Cir. 2006).  Upon the filing of the application, a prior
15   user's claim to the right to use the design subject to the
16   trademark is limited "to those areas where [it] then enjoyed
17   recognition based on its reputation, advertising, and sales."
18   Id. (citation omitted).

19   Stripped of its baseless contentions that TWG fraudulently
20   registered its trademark for the octagonal box design or copied
21   L&R's box design after the 2009 Sacramento symposium, L&R is left
22   with its contention that it began, in 2008, selling its Tamanend
23   wine in the prototype octagonal-sided boxes on a continuous basis
24   from a tasting room at its Lancaster location.[21]

25

26   [21] There is no material dispute that TWG began selling its
     wine in its "Octavin" equal-sided octagonal boxes beginning in
27   February 2010, that began selling wine in these boxes in
     Pennsylvania in April, 2010, and that it sells its wine
28                                          (continued...)

(L&R SUF ¶¶ 40, 104.) If demonstrated, such use would predate TWG's trademark application by a year and would create a genuine issue of material fact as to L&R's prior use claim.

L&R contends that it began genuine commercial use of the octagonal box for its TAMANEND wine in January 2008 and that it has used the octagonal wine box continuously ever since. (L&R SUF ¶¶ 40, 104.) The evidence is undisputed that L&R was provided with free prototype octagonal boxes by a manufacturer beginning in December 2007 (TWG SUF ¶¶ 30-31) and that L&R was considering using the octagonal box design. However, the totality of the circumstances does not support the conclusion that L&R's use of the octagonal wine boxes prior to TWG's filing of its trademark application for the wine box design on March 3, 2009 (TWG SUF ¶¶ 2-4), was actual "use in commerce" within the meaning of the Lanham Act.

First, the Court notes that L&R's factual statements appear to deliberately blur the lines between actions that L&R took prior to 2009 and its actions after 2009. By omitting relevant dates, combining factual statements related to its alleged pre-2009 sales with ones related to its post-2009 sales, and otherwise obscuring what facts specifically relate to its pre-2009 use of octagonal-sided wine boxes, L&R undercuts its prior use argument by raising questions as to the veracity of its factual statements.

---

[21](...continued)
nationally. (TWG SUF ¶ 16, 18, 20.) There is also no dispute that L&R did not begin selling wine in its octagonal boxes anywhere other than out of a single tasting room at its Lancaster location until at least April 2010, when it launched its "LNO" wine product. (L&R SUF ¶¶ 104-105.)

1   (See, e.g., L&R SUF, ECF No. 70, ¶¶ 1, 3-8, 12, 15-18, 30.)

2       Second, L&R has not provided persuasive evidence to support
3   its prior use claims.  L&R does not provide any sales data or
4   invoices that details sales of wine from the octagonal-sided
5   boxes. (TWG SUF ¶¶ 44-45.)  L&R also does not provide
6   documentation as to its sales plans or market research.  (Id.
7   ¶¶ 43, 46, 48.)  Beyond the evidence that L&R received free
8   prototypes of octagonal boxes from a manufacturer, the only
9   "evidence" of continuous sales and use of the octagonal boxes
10  prior to TWG's application for the trademark is the testimony of
11  L&R's Vice President, Richard Carey, and the company's President,
12  Linda Jones McKee, whose declarations serve as the basis for the
13  vast majority of L&R's factual contentions.  (See L&R SUF, ECF
14  70.)

15      In addition, the vast majority of the various documents,
16  testimony and declarations submitted by L&R in support of its
17  cancellation claim are inadmissible because they are attached to
18  the declaration of L&R's counsel of record, Frank J. Bonini, Jr.
19  ("Bonini"), who does not state that he has personal knowledge of
20  anything to which he attests and the attached exhibits are not
21  properly authenticated.  (See ECF No. 70-2.)  "An affidavit or
22  declaration used to support or oppose a motion must be made on
23  personal knowledge, set out facts that would be admissible in
24  evidence, and show that the affiant or declarant is competent to
25  testify on the matters stated."  Rule 56(c)(4); see also U.S. v.
26  $133,420.00 in U.S. Currency, 672 F.3d 629, 639-40 (9th Cir.
27  2012).
28  ///

1    Here, Bonini purports to authenticate most of the Exhibits
2    attached to his Declaration in the following manner: "Attached
3    hereto as Exhibit X is a true and correct copy of X produced by X
4    in this litigation."  This, or similar language, is used for the
5    following exhibits: 2, 3, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19,
6    20, 21, 23, 24, 25, 27, 28, 32, 36, 37, 38 and 39.  (ECF
7    No. 70-12.)  However, L&R does not provide any reason for the
8    Court to conclude that Bonini has the requisite personal
9    knowledge to authenticate these documents.  Further, as the
10   advocate for these exhibits, L&R bears the responsibility of
11   demonstrating that there is a sufficient evidentiary basis for
12   the Court to admit them once TWG raised its objections.  See,
13   e.g., In re Oracle Corp. Securities Litigation, 627 F.3d 376,
14   385-86 (9th Cir. 2010).  Here, L&R offers no response to TWG's
15   argument that Bonini cannot personally authenticate these
16   exhibits.  (See L&R's Opposition to TWG's Statement of
17   Evidentiary Objections, ECF 80.)  While L&R does contest TWG's
18   specific objections regarding particular items of evidence
19   included in its statement of facts in L&R's Opposition, the Court
20   generally finds L&R's arguments unpersuasive and, in particular,
21   rejects L&R's tangential argument that TWG's counsel's invocation
22   of attorney client privilege during a deposition was "an improper
23   attempt by TWG to conceal evidence."  (ECF 80 at 20-21.)  Again,
24   L&R's counsel has raised a particularly vituperative allegation
25   that lacks any reasonable evidentiary foundation.
26   ///
27   ///
28   ///

1    Given the voluminous mass of pleadings and evidence, and
2  given the fundamental issues with L&R's evidence (beginning with
3  the inability of Bonini to personally authenticate the evidence
4  attached to his declaration) and arguments (e.g., L&R's meritless
5  contentions regarding TWG's trademark application (i.e.,
6  "Inc." v. "LLC") and that TWG copied its box design, the Court is
7  not inclined to sift through the record to find support for L&R's
8  evidentiary contentions. <u>See</u>, <u>e.g.</u>, <u>In re Oracle Corp.</u>, 627 F.3d
9  at 385("It behooves litigants, particularly in a case with a
10  record of this magnitude, to resist the temptation to treat
11  judges as if they were pigs sniffing for truffles" (citation
12  omitted)); <u>Independent Towers of Washington v. Washington</u>,
13  350 F.3d 925, 929 (9th Cir. 2003) ("When reading [Plaintiff's]
14  brief, one wonders if [Plaintiff], in its own version of the
15  "spaghetti approach," has heaved the entire contents of a pot
16  against the wall in hopes that something would stick.  We
17  decline, however, to sort though the noodles in search of
18  [Plaintiff's] claim.").

19    Therefore, without delving into the minutiae of the parties'
20  evidentiary objections and responses, the Court concludes that
21  L&R's admissible evidence, viewed in the best light for L&R,
22  establishes that it was in possession of and exploring the use of
23  prototype equal-sided octagonal wine boxes prior to TWG's filing
24  of its trademark application in 2009.  Although there does not
25  appear to be any admissible or reliable evidence to support its
26  claim, L&R may have also sold some unknown amount of Tamenend
27  wine from an octagonal-sided box from a single tasting room in
28  its Lancaster location prior to TWG's application.

1  Assuming all of that is true, the question then becomes whether,
2  under the totality of the circumstances, this can establish L&R
3  as the senior user of the trademark. See Rearden, 683 F.3d at
4  1205-06.

5      First, "non-sales activities still must be sufficiently
6  public in nature to identify or distinguish the goods or services
7  in an appropriate segment of the public mind as belonging to the
8  owner." Id. at 1206 (citations omitted).  Furthermore,
9  "trademark rights are not conveyed through mere intent to use a
10 mark commercially." Brookfield Communications, Inc. v. West
11 Coast Entertainment Corp., 174 F.3d 1036, 1052 (9th Cir. 1999).
12 Here, L&R's possession of octagonal-sided boxes and initial
13 consideration of selling wine in these boxes, even its sale of
14 some unknown amount of Tamenend wine to an unknown number of
15 individuals, from a single tasting room in Pennsylvania, is
16 insufficient to establish that it created an association in the
17 public's mind between L&R and the mark.  Id.  Prior to TWG's
18 filing of its trademark application, L&R did not create a
19 marketing plan to sell the Tamenend wine product, did not pursue
20 any sales of wine outside of its alleged sales from a single
21 tasting room, and the evidence generally establishes that it took
22 no other action that would be consistent with establishing a link
23 between its mark and the public's mind (e.g., advertising).

24     In its Answer and Counterclaim, L&R contends that, in courts
25 in the Ninth Circuit, a "single sale" may constitute bona fide
26 first use of a mark when considered in the totality of that
27 user's subsequent use.
28 ///

44

1  See L&R's Answer and Counterclaim, ECF No. 60-1 at 12-18; L&R's
2  Reply Memorandum in Support of its Motion for Summary Judgment on
3  L&R's Cancellation Counterclaim, ECF 88 at 7-8 (citing Protec.
4  Diamond Tools, Incorporated v. Protec. Diamond Tools, Inc., 2009
5  U.S. Dist. LEXIS 53382 (N.D. Cal 2009).)   L&R argues that its
6  subsequent commercialization and sales of its LNO wine, starting
7  in 2010, are all part of a continuum of use of the octagonal
8  boxes that began in 2008 and demonstrate that it had a genuine
9  commercial intent to use the octagonal-sided box.  (Id.)

10      However, L&R's prior use claim and defense must fail because
11  the claimed sales of Tamanend wine in the box prior to March 3,
12  2009 are (a) based entirely on the uncorroborated and self-
13  serving testimony of L&R's executives and there are no facts on
14  which the Court can determine whether that claimed use resulted
15  in common law rights, and (b) even if L&R's alleged sales of wine
16  in octagonal boxes prior to March 3, 2009, occurred, they were
17  not a genuine commercial use of the box as they were limited to
18  some unknown number of sales of the Tamanend wine made from the
19  Lancaster tasting room and unaccompanied by any demonstrated
20  intent to commercialize those sales prior to TWG's application
21  for the trademark.[22]

22  ///
23  ///
24  ///
25

26      [22] The Court notes that TWG's expert, Michael C. Bellas
27  found that L&R did not follow common wine industry practices for
    developing and commercializing the equal-sided octagonal box as
28  alternative packaging for its Tamanend wine.  (See TWG SUF at
    ¶¶ 73-84.)   L&R offers no persuasive rebuttal to this evidence.

The Court concludes that L&R's subsequent development and sales
of the LNO wine product in octagonal boxes did not flow directly
from its prior exploration of the wine octagonal boxes, therefore
did not constitute a continuous use that would support L&R's
prior use argument.  Chance, 242 F.3d at 1159.

When TWG filed its trademark application on March 3, 2009,
L&R's trademark area was frozen, see Quicksilver, 466 F.3d at 762
("When [plaintiff] filed its trademark applications,
[defendant's] trade area [for the mark] was frozen.") Further,
TWG's evidence established that it was L&R's subsequent decision
to commercialize its sales of the LNO wine product in an
octagonal box cannot be used to establish its rights as a senior
user of the mark.

Therefore, L&R has failed to counter TWG's contention that
it is the legitimate owner of the trademark registration as of
March 3, 2009, and therefore is presumed to have national and
exclusive rights to the mark as of that date.  15 U.S.C.
§§ 1057(b), 1115(a); see e.g., CreAgri Inc. v. USANA Health
Sciences, Inc., 474 F.3d 626, 629 (9th Cir. 2007).  While it is
true that L&R could be entitled to use the mark in geographic
areas where it was using the mark, if it could establish common
law rights to the mark as of the date of TWG's application, the
Court concludes that the totality of the evidence does not
support the conclusion that L&R was engaged in commercial use of
the octagonal box at its Lancaster tasting room, or anywhere
else, as of March 3, 2009, when the geographic scope of L&R's use
was frozen.  Quicksilver, 466 F.3d at 762.

///

46

1    In sum, the Court concludes that L&R's contention that it is

2  entitled to summary judgment on its cancellation claim because it

3  was a prior continuous user of the mark fails because the

4  totality of the evidence does not support the conclusion that L&R

5  engaged in prior continuous commercial use.  L&R's Motion for

6  Summary Judgment on its Cancellation Claim (ECF No. 68) is

7  therefore denied.

8    L&R is also not entitled to damages.  The Lanham Act

9  entitles a successful plaintiff to recover proven damages.

10 15 U.S.C. § 1117.  Damages can be measured in two ways: loss to

11 the plaintiff or gain to the defendant (its "profits" on the

12 infringing sales).  A plaintiff cannot recover the defendant's

13 profits unless it can prove the infringement is willful and

14 deliberate.  <u>Kassbaum v. Steppenwolf Productions, Inc.</u>, 236 F.3d

15 487, 492 (9th Cir. 2000).  Because L&R cannot prevail on its

16 counterclaim for cancellation, it is not entitled to damages.[23]

17 In contrast, TWG has established its exclusive rights to the mark

18 as of its March 3, 2009 application date, that there is no

19 dispute as to infringement (as both parties concede infringement

20 in support of their claims), and that its rights are national in

21 scope.  L&R's continued use of the octagonal wine box design

22 therefore infringes on TWG's mark and TWG is entitled to remedies

23 for L&R's infringement.

24 ///

25 ────────────────────

26     [23] The Court notes that L&R also failed to disclose a
   damages computation in its Initial Disclosures as required by
   Federal Rule of Civil Procedure 26 (a)(1)(A)(iii) or in a
27 supplemental disclosure.  (TWG SUF ¶¶ 93, 95.)  However, those
   failures are rendered moot by the fact that L&R cannot succeed on
28 its counterclaim.

1          **(b)   L&R's First Amendment Affirmative Defense**

2

3          L&R contends that "TWG impermissibly seeks to impose

4    liability on conduct protected from liability by the First

5    Amendment to the United States Constitution."  (Answer and

6    Counterclaim, ECF No. 8 ¶ 36.)  L&R does not provide any facts in

7    support of this defense.  Further, with no citation to any

8    authority, L&R states that it "simply seek[s] to use [its]

9    original artistic creations pursuant to the First Amendment's

10   guarantee of freedom of expression."  (L&R's Opposition to TWG's

11   Motion for Summary Judgment, ECF No. 70 at 14-15.)  The First

12   Amendment does not bar the enforcement of valid trademark rights.

13   E. & J. Gallo Winery v. Gallo Cattle Company, 967 F.2d 1280, 1297

14   (9th Cir. 1992).  The Court concludes that L&R has not pleaded

15   sufficient facts or law to support this defense.

16

17                              **CONCLUSION**

18

19        As a matter of law and for the reasons set forth above,

20        1.   TWG's Motion for Summary Judgment (ECF No. 56) is

21   GRANTED;

22        2.   L&R's Motion for Summary Judgment on its Counterclaim

23   for Cancellation (ECF No. 60) is DENIED;

24        3.   L&R's Motion for Summary Judgment on its Second

25   Affirmative Defense (ECF No. 58) is DENIED AS MOOT;

26        4.   TWG's Contingent Motions for Summary Judgment on L&R's

27   Cancellation and Inequitable Conduct Claims (ECF No. 69) and on

28   L&R's Claims of Unclean Hands (ECF No. 86) are DENIED AS MOOT;

                                  48

5.    L&R's Motion to Strike the Declarations of L. Jones and J. Sutton and Cross-Motion for Summary Judgment on TWG's Claims Based on TWG's Unclean Hands (ECF No. 72) is DENIED; and

6.    As discussed in Section B of the Analysis, the Court concludes that sanctions are warranted for L&R's violations of Rule 11 and 28 U.S.C. § 1927.

Because TWG has prevailed on its Motion for Summary Judgment (ECF No. 56), the Court hereby ORDERS that:

1.    L&R is enjoined from any further infringement of TWG's trademarks in the United States;

2.    TWG is entitled to an award in the amount by which Defendants have been unjustly enriched;

3.    TWG is entitled to its costs of suit, including TWG's reasonable attorneys' fees; and

4.    Within thirty (30) calendar days of the electronic filing of this Memorandum and Order, TWG is directed to file a single memorandum of no more than fifteen (15) pages (INCLUDING ANY AND ALL EXHIBITS) discussing: (a) the award and costs that it contends it is entitled to; and (b) what sanctions it contends are appropriate for L&R's violations of Rule 11 and 28 U.S.C. § 1927. Within fifteen (15) calendar days after TWG has electronically filed its memorandum, L&R shall file a single memorandum of no more than fifteen (15) pages (INCLUDING ANY AND ALL EXHIBITS) discussing: (a) the award and costs that TWG is entitled to; and (b) what sanctions are appropriate for its violations of Rule 11 and 28 U.S.C. § 1927.

///

///

1  No further memoranda responsive to these issues shall be
2  submitted without leave of the Court.
3      IT IS SO ORDERED.
4
   Dated: September 7, 2012
5
6
7                              _____
                              MORRISON C. ENGLAND, JR.
8                              UNITED STATES DISTRICT JUDGE
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28